UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

KEVIN BACHHUBER,
on behalf of himself and all others
similarly situated,

            Plaintiff,

v.

ALPINE FUNDING PARTNERS, LLC,

            Defendant.

Case No. 3:24-cv-00907-wmc-amb

---

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL**

---

Alpine's motion to compel should be deemed moot because Plaintiff has more than complied with Requests 1–6. Since Alpine filed its motion, Plaintiff has produced hundreds of pages of responsive materials—including business funding and grant applications and filings[1], Google Voice records, correspondence identifying business numbers, and five years of tax returns[2]—and has even executed multiple carrier authorizations so Alpine can obtain primary-source records directly[3]. *See* Declaration of Cassandra P. Miller ("Miller Decl."), **Exhibits 2-6**, Production Emails. Despite this extraordinary level of cooperation, Alpine remains unsatisfied and continues to demand more, without articulating any probative value for the additional materials it seeks.

Alpine's response to Plaintiff's continued productions has been to move the goalposts,

---

[1] On August 19, Plaintiff served Defendant with more than 600 pages of business applications for Plaintiff's businesses. *See* Miller Decl. ¶3; Aug. 19, 2025 Email Cover Transmitting PL-Bachhuber-00005–000697.
[2] Plaintiff produced tax returns for the years 2020–2024. *See* Miller Decl. ¶7; Aug. 28, 2025 Email Cover Transmitting Production
[3] At Defendant's request, on August 27, 2025, Plaintiff provided signed authorizations for records to Google Voice, Verizon, and Mint Mobile. *See* Miller Decl. ¶6, Email Cover Transmitting Production.

1

demanding still more (including four years of WhatsApp metadata and additional correspondence and documents from defunct entities). Rule 26 does not permit that kind of overbroad, burdensome fishing expedition. The Court should deem Plaintiff's production sufficient and deny the motion.

Alpine has pursued a one-sided discovery campaign—demanding "any and all" materials from Plaintiff while refusing to produce its own outbound call/text data that speak to class issues. Its RFPs 1–6 sweep in "all documents" showing any telephone number for Plaintiff or any business he has ever owned, including tax returns, advertisements, applications, and correspondence, regardless of timeframe or relevance to the texts at issue (which occurred from May 2022 to October 2024).

Plaintiff respectfully asks the Court to deem Alpine's motion moot in light of the more than 1,400 pages of production already served. In the alternative, Plaintiff requests that the Court require Alpine to either narrow its email demands to a reasonable sampling with defined search terms, or accept a tailored WhatsApp authorization in lieu of further burdensome email review.

## I. ALPINE'S REQUESTS NOS. 1–5 ARE SATISFIED AND REQUIRE NO FURTHER PRODUCTION

Alpine seeks to enforce the following Requests for Production, each of which is facially overbroad, disproportionate, and untethered to the narrow issues in this case.[4]

> Request No. 1: All Documents reflecting the use of the telephone number referenced in Complaint ¶ 16 as '608-345-XXXX' for any purpose, including, but not limited to, telephone bills, payment records, checks, correspondence, applications, invoices, and any communications with internet service providers or cellular service providers.
>
> Request No. 2: All Documents—including, without limitation, invoices, correspondence, websites, corporate filings, advertising, call records, tax returns, applications for funding, and text messages—that identify any telephone number(s)

---

[4] Based on the parties' meet-and-confer history, Plaintiff believes the disputes over Requests Nos. 1–5 have been resolved, with only Alpine's new demands for WhatsApp and email production remaining at issue. However, to the extent Alpine still seeks to enforce any remaining issues related to Requests Nos. 1–5, Plaintiff addresses each request in turn.

at which Bachhuber Consulting, LLC, or Plaintiff acting on its behalf, has been contacted or is capable of being contacted.

Request No. 3: All Documents—including, without limitation, invoices, correspondence, websites, corporate filings, advertising, call records, tax returns, applications for funding, and text messages—that identify any telephone number(s) at which Madison Cricket Farms, LLC, or Plaintiff acting on its behalf, has been contacted or is capable of being contacted.

Request No. 4: Request: "All Documents—including, without limitation, invoices, correspondence, websites, corporate filings, advertising, call records, tax returns, applications for funding, and text messages—that identify any telephone number(s) at which Big Cricket Farms, LLC, or Plaintiff acting on its behalf, has been contacted or is capable of being contacted."

Request No. 5: All Documents—including, without limitation, invoices, correspondence, websites, corporate filings, advertising, call records, tax returns, applications for funding, and text messages—that identify any telephone number(s) at which Tikkun Olam, Inc., or Plaintiff acting on its behalf, has been contacted or is capable of being contacted.

Request No. 6: "All Documents—including, without limitation, invoices, correspondence, websites, corporate filings, advertising, call records, tax returns, applications for funding, and text messages—that identify any telephone number(s) at which any other business owned, operated, or controlled by Plaintiff, or Plaintiff acting on its behalf, has been contacted or is capable of being contacted."

The sweeping language of Alpine's requests—demanding "all documents" across nearly every category of Plaintiff's personal and business records and reaching into every entity he has ever owned or operated—confirms that Alpine is not seeking targeted, probative discovery, but rather an unrestricted license to invade Plaintiff's private affairs. Rule 26 does not permit such boundless demands.

Even so, Plaintiff has gone well beyond what is required: producing hundreds of pages of responsive records, five years of tax returns, carrier call logs, and business filings, and even executing third-party authorizations to allow Alpine direct access to primary-source records. Miller Decl. ¶¶ 3-11, **Exhibits 2-7**. Plaintiff's production more than satisfies the legitimate scope of discovery, and the Court should reject Alpine's attempt to compel further compliance with

requests that are plainly excessive on their face.

1. **Plaintiff has Satisfied Obligations as to Request No.1:**

RFP 1, which seeks "all documents reflecting the use" of Plaintiff's personal number 608-345-XXXX "for any purpose," is facially overbroad and disproportionate. Plaintiff has already produced the only probative records—Google Voice call logs and bills—and has gone further by executing a carrier authorization so Alpine can obtain the complete call records directly from the source. These materials fully address the narrow issue Alpine claims to be testing: whether Plaintiff's personal number was used as a residential line.

To the extent Alpine now seeks any additional categories of documents, such as checks, applications, or private correspondence, those demands far exceed the scope of Rule 26 and have not been specifically identified in Rule 37 discussions.[5] Courts routinely reject requests for "any and all documents" as vague and unduly burdensome. *Dauska v. Green Bay Packaging, Inc.*, 291 F.R.D. 251, 261 (E.D. Wis. 2013) (refusing omnibus requests for "all documents relating to" as facially overbroad). Plaintiff has met his obligations, and Alpine's motion to compel further production under Request No. 1 should be deemed moot.

2. **Plaintiff has Satisfied His Obligations as to Request Nos. 2 and 3**

RFPs 2 and 3, directed at Bachhuber Consulting LLC and Madison Cricket Farm LLC, are likewise facially overbroad and disproportionate. Despite this, Plaintiff has attempted to comply with Alpine's demands.

Both Bachhuber Consulting LLC and Madison Cricket Farm LLC were small, local

---

[5] Since the parties' Rule 37 discussions to date have not focused on these categories of documents, Plaintiff assumes Alpine is no longer pursuing them. To the extent Alpine now attempts to revive or enforce such requests, the Court should deny that effort as waived and beyond the proper scope of Rule 26. These categories have never been specifically identified during meet-and-confer discussions and cannot be raised for the first time through a motion to compel.

businesses with only a handful of employees at any given time, and both have since ceased operations. Plaintiff has produced extensive records reflecting their activities and telephone usage, including archived website screenshots from 2015, corporate agreements and credit applications from 2019–2020, and government grant proposal materials dating back to 2020. Miller Decl., ¶3. Plaintiff has also produced representative correspondence such as business letterheads and email signature lines. In addition, Plaintiff produced detailed call logs from January through July 2025 that were within his possession, documenting both legitimate contacts and unsolicited or scam-related calls, and has executed authorizations for Alpine to obtain carrier records for other periods directly. Taken together, these materials provide a comprehensive record of Plaintiff's communications and business activities across the relevant timeframe.

Plaintiff's interrogatory responses further clarify how these businesses communicated: Bachhuber Consulting LLC (2016–2023) relied primarily on Google Voice, with occasional use of Ooma or WhatsApp during international travel; Madison Cricket Farm (2021–2023) likewise used Google Voice and specifically instructed customers to call or text that number rather than Plaintiff's personal cell. These disclosures directly rebut Alpine's assertion that 608-345-XXXX was used as a business line.

In addition to business applications and filings, Plaintiff has produced Google Voice records showing distinct business numbers, representative correspondence, and—at Alpine's insistence—five years of personal and business tax returns (2020–2024). Plaintiff produced these tax records despite the fact that courts strongly disfavor tax return discovery absent a compelling need, particularly in TCPA litigation, because such documents shed no light on whether a personal cell phone functioned as a residential line. *Charvat v. Travel Servs., Inc.*, 110 F. Supp. 3d 894, 899–902 (N.D. Ill. 2015). Alpine therefore already has far more than is typical or necessary to test

5

its defense. Additional demands for invoices, advertising, or other expansive categories would impose burden without probative value. Plaintiff's production is sufficient, and Alpine's motion as to Requests 2 and 3 should be denied as moot.

### 3. Plaintiff Has Satisfied His Obligations as to Requests 4 and 5

RFPs 4 and 5 go even further afield by demanding documents from Big Cricket Farms and Tikkun Olam—entities that ceased operations years before the alleged texts at issue and fall well outside the class period (December 2020–December 2024). Plaintiff's interrogatory responses confirm that Tikkun Olam, Inc., operated only from 2012–2014, had no phone number, and therefore has no responsive records. Big Cricket Farms operated briefly from 2014–2015 and relied exclusively on Google Voice for communications, with multiple employees using that platform on their own devices to respond to customers. Neither entity existed during the period when the alleged unauthorized texts were sent (May 2022–October 2024), and neither has any connection to Plaintiff's personal number at issue in this case.

Compelling production from long-defunct entities that predate the alleged conduct is irrelevant and disproportionate to the needs of this case. Courts routinely reject such demands where the burden of resurrecting old records far outweighs any conceivable benefit. *See, e.g., Charvat*, 110 F. Supp. 3d at 894; *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002); *Dauska*, 291 F.R.D. at 258. Plaintiff's production to date is more than sufficient, and Alpine's motion as to Requests 4 and 5 should be denied.

### 4. Plaintiff's Objections to Request No 6:

RFP 6 is the most sweeping demand of all, a catch-all that seeks records for "any other business ever owned, operated, or controlled" by Plaintiff. On its face, the request is untethered to the claims and has no limiting principle. Plaintiff has already identified his businesses and produced responsive records relevant to the claim period, including business filings,

6

correspondence, carrier logs, and five years of tax returns. Forcing Plaintiff to search for and produce unlimited historical records from any conceivable past venture is improper and disproportionate. Courts in TCPA cases consistently reject efforts to compel such intrusive and speculative discovery into plaintiffs' broader personal and business affairs. *See Moser v. Health Ins. Innovations, Inc.*, No. 17-cv-1127, 2018 WL 3628890, at *4 (S.D. Cal. July 31, 2018) (denying requests for forensic inspection and "all" IP addresses as overbroad and disproportionate).

In sum, RFPs 1–6 function as an impermissible fishing expedition for irrelevant and personal records. Plaintiff has already produced the records that directly address the central issue—whether 608-345-XXXX was used as a residential line between May 2022 and October 2024. Rule 26 requires relevance and proportionality, not an exhaustive rummaging through every aspect of Plaintiff's private and business history. Alpine's motion should be denied, and Plaintiff's production deemed sufficient.

## II. COURT SHOULD DEEM REQUEST NO. 6 SATISFIED OR REQUIRE ALPINE TO NARROW ITS REQUESTS

Alpine is using RFP 6 to demand (1) a manual review of more than 15,000 emails and (2) a sweeping four-year authorization for all WhatsApp metadata. Both demands underscore Alpine's moving-target approach to discovery.

Plaintiff has already produced more than 80 responsive emails from this search, with sensitive personal and third-party business information carefully redacted.

Plaintiff has also explained that his WhatsApp account is used almost entirely for personal communications, with only limited business-related use during discrete periods of international travel, and has offered to provide an affidavit confirming this fact along with the dates of his international onsite travel when WhatsApp may have been used for business purposes. Alpine, however, has refused to accept these good-faith efforts to narrow or resolve the issue.

7

Critically, Alpine has not taken Plaintiff's deposition or otherwise pursued the targeted discovery necessary to determine whether WhatsApp records are even relevant. Instead, it seeks to bypass proportionality requirements by demanding wholesale access to private communications under the guise of an RFP. Rule 26 does not allow a party to bury its head in the sand and demand everything simply because it has not bothered to use ordinary discovery tools to test relevance. The Court should require Alpine to pursue relevance through basic, proportional discovery before authorizing any further intrusion into Plaintiff's personal data.

### A. Alpine's Demand for a Blanket WhatsApp Authorization Is Disproportionate and Intrusive

The authorization that Alpine seeks from Plaintiff demands the release of "all WhatsApp metadata (including logs of incoming messages and outgoing messages)" for his personal number across a sweeping four-year period. Such a blanket authorization is disproportionate and intrusive, particularly given that Plaintiff has already produced over 1,400 pages of records, five years of tax returns, call logs, business filings, and executed Verizon, Google, and Mint Mobile authorizations. Rule 26 requires relevance and proportionality—and does not authorize wholesale intrusion into private and irrelevant communications. *See Moser*, 2018 WL 3628890, at *4 (rejecting forensic access and demands for "all" data as overbroad).

To avoid unnecessary motion practice, Plaintiff has already proposed—and remains willing to execute—a tailored authorization limited to logs-only data (excluding message content) and confined to the discrete time periods when Plaintiff's WhatsApp number was in his signature line while abroad. That compromise balances Alpine's stated need with Plaintiff's legitimate privacy concerns. By contrast, Alpine's insistence on years of personal metadata, or endless manual email review, is neither proportional nor necessary.

The Court should deem Plaintiff's production obligations satisfied. At most, if the Court

believes further discovery is warranted, it should be limited to the narrow logs-only authorization for the discrete periods identified by Plaintiff, rather than granting Alpine the sweeping four-year license it seeks.

### B. Court Should Deem Plaintiff's Email Production Sufficient, or Require Alpine to Narrow its Search

Alpine's use of RFP 6 to demand email discovery demonstrates the overbreadth of its approach. Alpine insisted that Plaintiff run search terms across his entire email account for a four-year period (2020–2024), using generic terms such as "phone number," "608-345-4567," "4567," and "608-512-0595." These broad terms returned an extraordinary 15,456 hits—many of which, by definition, are irrelevant, duplicative, or incidental.

On September 9, 2025, Plaintiff initially pulled 30,857 emails for review. With substantial effort, Plaintiff and his team narrowed that dataset to 8,493 emails by removing duplicates, refining by search term, and excluding irrelevant replies, forwards, and other non-substantive iterations. *See* Miller Decl. ¶¶ 9-11. From there, Plaintiff conducted a line-by-line manual review. For the first batch of production on September 12, 2025, Plaintiff reviewed 623 emails and produced 76 responsive emails (totaling 613 pages, Bates Nos. PL-Bachhuber-000830–0001443) after redactions.[6] To date, Plaintiff has produced over 80 responsive emails in total as well as each form signature line used by Plaintiff's business email account between 2020-2024.

Each of these reviewed emails required individualized analysis to remove irrelevant attachments, extraneous chains, privileged communications, and sensitive client information. The redactions protect third-party confidentiality and unrelated business details, while still providing Alpine with the responsive data tied to its chosen search terms. This process underscores both

---

[6] Despite being informed that its search terms returned more than 15,000 hits, Alpine declined to narrow or refine them and instead directed Plaintiff to "go ahead and produce the emails." This refusal to tailor its requests underscores that the burden here is self-inflicted. *See* Miller Decl. ¶8, Exhibit 7, p. 3.

9

Plaintiff's good faith and the disproportionate burden Alpine's untailored demands impose.

Despite Plaintiff's request that Alpine narrow these terms, Plaintiff nevertheless undertook the burdensome task of manually reviewing the results. Miller Decl. ¶¶ 8-11. Each email must be carefully examined to remove irrelevant attachments, extraneous chains, privileged material, and sensitive client information. To date, Plaintiff has produced more than 80 responsive emails with appropriate redactions. These redactions protect third-party confidentiality and business information unrelated to the claims while still providing Alpine with responsive data tied to the search terms.

Alpine now complains that the redactions render the production "virtually unusable." But the documents Alpine demands go to Plaintiff's business clients—not class members—and have no relevance to whether Alpine sent unlawful telemarketing texts or whether Plaintiff's personal number was primarily residential. Rule 26 does not entitle Alpine to intrusive discovery into Plaintiff's unrelated business relationships merely because it is dissatisfied with the scope of the responsive records. *See Moser*, 2018 WL 3628890, at *4–6 (rejecting broad discovery requests where burden outweighed any probative value).

Plaintiff has already gone well beyond what is typically required in TCPA litigation by producing responsive emails, call logs, business records, tax returns, and executing multiple carrier authorizations. If Alpine believes additional email discovery is necessary, the appropriate course is to narrow its search to reasonable, targeted terms or a sampling protocol—not to force Plaintiff into an indefinite manual review of thousands of irrelevant communications.

Accordingly, the Court should deem Plaintiff's email production sufficient to satisfy RFP 6. In the alternative, Alpine should be required to narrow its request to a more reasonable sampling or targeted search parameters before any further production is compelled.

### III. PLAINTIFF'S NUMBER IS PRESUMPTIVELY RESIDENTIAL, MAKING ALPINE'S EXPANSIVE DISCOVERY UNNECESSARY

Alpine attempts to justify its overbroad discovery demands by claiming it must "test" whether Plaintiff's 608-345-XXXX number is truly residential. However, relevant and applicable binding and persuasive authority makes clear that Alpine's premise is flawed. In *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1229–30 (9th Cir. 2022), the Ninth Circuit held that cell phones registered on the National Do Not Call Registry are presumptively residential—even if they are used for both personal and business purposes. That presumption squarely applies here: Plaintiff registered his number on the DNC list years ago and has consistently used it as his household line.

Under *Chennette*, the burden shifts to Alpine to rebut that presumption with evidence showing the number was used predominantly as a business line. Alpine has not come close to making such a showing. Instead, it seeks four years of Plaintiff's emails, WhatsApp metadata, and records from long-defunct entities, hoping to stumble across something that might undermine the presumption. Rule 26 does not authorize this kind of speculation. *See Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011) (Rule 26 "is not a license for unwieldy, burdensome, and speculative fishing expeditions").

District courts in this Circuit have reached the same conclusion. In *Reimer v. Kohl's, Inc.*, No. 23-CV-597-JPS, 2023 WL 6161780, at *6–10 (E.D. Wis. Sept. 21, 2023), the court confirmed that the FCC's 2023 rulemaking was a clarification—not a new rule—and reaffirmed that the TCPA's Do Not Call protections apply to text messages sent to cell phones. Taken together, *Chennette* and *Reimer* foreclose Alpine's suggestion that limitless discovery is needed to "test" Plaintiff's number. The presumption of residential status controls, and Alpine cannot evade it through disproportional demands.

Alpine's misplaced reliance on *Bank v. Independence Energy Group LLC*, 2015 WL

11

4488070 (E.D.N.Y. July 23, 2015), underscores the weakness of its position. In *Bank*, the plaintiff attorney repeatedly and publicly held out his number as a business line—including on pleadings, his attorney registration, business cards, tax returns, and online directories. On that undisputed record, the court found the number was not residential. Here, by contrast, Plaintiff has produced records confirming that his companies used separate business numbers, subscriber information establishing that 608-345-XXXX was his personal line, and authorized Defendant to obtain detailed call logs. He has also produced five years of tax returns that do not list that number for business purposes. Plaintiff has never advertised or registered his personal cell phone as a business line. Unlike *Bank*, the record here demonstrates continued residential use.

Nor do Alpine's "any and all documents" requests save its motion. Courts reject such omnibus demands as facially overbroad. *See Dauska*, 291 F.R.D. at 261. Alpine's own description of its requests confirms their vagueness: "if a document from one of Bachhuber's companies states a phone number… it fits within the Request." *See* Def. Memo at 7. That is not targeted discovery—it is an invitation to rummage through years of Plaintiff's personal and business affairs.

The procedural record further demonstrates Alpine's shifting tactics. Plaintiff has consistently clarified scope, narrowed disputes, produced hundreds of pages of documents, five years of tax returns, and executed multiple authorizations. Each time, Alpine has responded by declaring the production "deficient" and moving the goalposts—first demanding tax returns, then correspondence, then emails, then WhatsApp metadata. Meanwhile, Alpine refuses to produce its own outbound calling records, which are central to class certification. This one-sided approach reflects litigation gamesmanship, not a legitimate discovery dispute.

The bottom line is clear: Plaintiff has produced far more than Rule 26 requires in a TCPA case, while Alpine continues to expand its demands in search of leverage. Plaintiff's number is

presumptively residential under *Chennette* and *Reimer*. Alpine has failed to rebut that presumption and cannot justify invasive discovery into Plaintiff's personal communications. The motion to compel should be denied and Plaintiff's production deemed sufficient. At most, any additional discovery should be confined to the relevant timeframe (May 2022 to October 2024) and directly concerning Plaintiff's personal number, 608-345-XXXX.

## IV. CONCLUSION

For all these reasons, Alpine's motion to compel should be denied as moot. Plaintiff has already complied in good faith and produced more than sufficient discovery—hundreds of pages of personal and business records, call logs, tax returns, and executed authorizations—well beyond what is typical or necessary in a TCPA case. Alpine's continued demands for expansive, irrelevant, and burdensome materials amount to a fishing expedition, not a legitimate discovery dispute. The Court should deem Plaintiff's production sufficient under Rule 26 and deny Alpine's motion in its entirety.

In the alternative, if the Court determines additional discovery is warranted, Alpine should be required to: (i) narrow its email requests to a reasonable sampling or targeted search terms; or (ii) accept a tailored WhatsApp authorization limited to metadata and confined to discrete travel periods identified by affidavit, in lieu of further burdensome email review.

*[Attorney signature block to follow on next page.]*

DATE: September 24, 2025

Respectfully submitted,

*/s/ Cassandra P. Miller*
Cassandra P. Miller (*pro hac vice*)
Alex Phillips
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
T: (872) 263-1100
F: (872) 263-1109
cmiller@straussborrelli.com

Anthony Paronich
**PARONICH LAW, P.C.**
350 Lincoln St., Suite 2400
Hingham, MA 02043
T: (617) 485-0018 F: (508) 318-8100
anthony@paronichlaw.com

*Attorneys for Plaintiff and Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Respectfully Submitted,

*/s/ Cassandra P. Miller*
Cassandra P. Miller (*pro hac vice*)
Alex Phillips
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
T: (872) 263-1100
F: (872) 263-1109
cmiller@straussborrelli.com